```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

|                              |   |                         |
|------------------------------|---|-------------------------|
| SHERI A. CARNAGHI,           | ) |                         |
|                              | ) |                         |
|             Plaintiff,       | ) | Case. No. 11 C 2718     |
|        v.                    | ) |                         |
|                              | ) | Magistrate Judge        |
| Michael J. Astrue,           | ) | Arlander Keys           |
| Commissioner of Social       | ) |                         |
| Security                     | ) |                         |
|             Defendant.       | ) |                         |

## MEMORANDUM OPINION AND ORDER

On August 6, 2012, the Court issued a Memorandum Opinion and Order that granted Plaintiff Sheri A. Carnaghi's motion for summary judgment. The Court remanded her claim for Social Security disability benefits for further proceedings, finding that the ALJ failed to adequately address certain issues related to the testimony of the vocational expert. *See Carnaghi v. Astrue*, No. 11 C 2718, 2012 WL 3292834 (N.D. Ill. Aug. 6, 2012). On September 18th, 2012, Plaintiff filed a motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Plaintiff requests an award of $11,826.53 (Pl.'s Reply at 12), based on an hourly rate of $182.13 for her lawyer. Pursuant to a retainer and fee agreement between Plaintiff and her lawyer, (Pl.'s Mot. Ex. 2), Plaintiff asks that the award be made payable to her lawyer. The Commissioner argues that Plaintiff has not made a sufficient showing to justify a rate above the statutory maximum of $125. *See* 28 U.S.C. § 2412(d)(2)(A)(ii).

Additionally, the Commissioner challenges whether the award should be made payable to Plaintiff or her lawyer. For the reasons explained below, Plaintiff's motion is granted at a rate of $175 per hour, to be made payable directly to her lawyer, Barry A. Schultz.

**A. Award of Fees Under the EAJA**

The EAJA provides that the court shall award fees and other expenses to a prevailing party, other than the United States, "in any civil action…including proceedings for judicial review of agency action, brought by or against the United States…unless the court finds that the position of the United States was substantially justified…." 28 U.S.C. § 2412(d)(1)(A). A position is substantially justified if it was "grounded in '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.'" *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (quoting *Phil Smidt & Son, Inc. v. NLRB*, 810 F.2d 638, 642 (7th Cir. 1987). The Court's remand made Plaintiff the "prevailing party." *Shalala v. Schaefer*, 509 U.S. 292, 300-301 (1993).

It was originally unclear whether the Commissioner intended to argue that the government's position was substantially justified. Although the Commissioner's response to Plaintiff's

2

motion contained a recitation of the legal standard, there was no argument. (Def.'s Resp. at 1-2.) The Commissioner failed to meet his burden of proof by making no argument, but the Court is also satisfied that the Commissioner did not intend to challenge Plaintiff's right to some amount of EAJA fees. Plaintiff explained that her counsel contacted Anne Kenny Kleinman, of the Office of General Counsel, who confirmed that the Commissioner did not intend to make a substantial justification argument in this case. (Pl.'s Reply at 1.) As a result, the parties agree, and the court finds, that the Plaintiff is entitled to some amount of fees under the EAJA.

## B. Hourly Rate for Attorney's Fees

The parties' primary dispute is whether a cost of living adjustment should be made to the statutory maximum of $125 per hour for attorney's fees under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). The Commissioner argues that Plaintiff must show she could not have found a competent attorney for $125 per hour. (Def.'s Resp. at 4.) For this proposition, the Commissioner relies on the recent Seventh Circuit opinion *Mathews-Sheets v. Astrue*, 653 F.3d 560 (7th Cir. 2011). Plaintiff, however, argues that the Commissioner misreads *Mathews-Sheets* by "seizing" on part of a single sentence in that opinion. (Pl.'s Reply at 2-3.) In Plaintiff's view, neither *Mathews-Sheets* nor the EAJA itself require such a showing. Plaintiff contends that the inability to find a competent

attorney is a separate special factor which could justify a fee in excess of $125 per hour, but that it is not the only method of justifying an increase. Rather, Plaintiff contends, it is enough for a prevailing party to show that inflation has directly affected her lawyer's costs of providing legal services and the fees her lawyer charges. (Pl.'s Reply at 5.) Based on the language of the EAJA and the *Mathews-Sheets* opinion considered as a whole, the Court finds Plaintiff's arguments convincing.

The EAJA limits attorney's fees to $125 per hour, but allows a court to award a higher rate under certain circumstances. Specifically, the statute states: "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. §2412 (d)(2)(A)(ii) (emphasis added). The plain language of the statute—the use of "or" rather than "and"—indicates that Congress did not intend to require that an attorney show both an increase in the cost of living and that no qualified attorney could be found for a rate of $125 to justify a higher rate. Either showing is sufficient under the statute. *See, e.g., Mireles v. Astrue*, No. 10 C 6947, 2012 WL 4853065, at *2 (N.D. Ill. Oct. 11, 2012); *Claiborne v. Astrue*, No. 10 C 7728, 2012 WL 2680777, at *3) (N.D. Ill. July 6, 2012). F

When the *Mathews-Sheets* opinion is considered as a whole, rather than focusing on a single excised sentence, it becomes clear that the opinion can be read consistently with this expressed intent of Congress.  The Commissioner focuses on part of a sentence in the case that could suggest a plaintiff must show, in all instances, that "a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case [for $125 per hour]."  *Mathews-Sheets*, 653 F.3d at 565.  If the Commissioner's interpretation were correct, however, it would be difficult to reconcile the statement with the paragraph immediately prior to it which explains, "[i]t might seem that because the cost of living special factor is not automatic, the two enumerated special factors merge; the lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case.  But that is not correct."  *Id*.  The Commissioner's interpretation, therefore, cannot stand without creating an internal contradiction.

It is not necessary to read such a contradiction into *Mathews-Sheets*.  Earlier in the opinion, the court explained that a "lawyer seeking [a cost of living] adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government…No such

5

showing was made." *Id*. at 563 (citations omitted). Counsel in *Mathews-Sheets* instead argued that a cost of living adjustment did not need to be requested because it was automatic. The court clarified that such an increase is not automatic. *Id.* In addition, after initially requesting $225 per hour as the prevailing market rate, the lawyer in his reply brief reduced his request to $170 per hour, citing the Consumer Price Index. However, the lawyer apparently did not make any showing that such inflation had actually affected his costs and fees. The court reiterated that "[a]n inflation adjustment must…be justified by reference to the particular circumstances of the lawyer seeking the increase." *Id*. at 564. In sum, the lawyer in *Mathews-Sheets* failed to make a cost of living argument.

Since counsel in *Mathews-Sheets* had not made a cost of living argument, he would need to argue a special factor to justify a rate above $125. He had not invoked any other special factor, so his final option would be to argue the special factor mentioned in the EAJA. That is, "…the limited availability of qualified attorneys for the proceedings involved…" 28 U.S.C. § 2412(d)(2)(A)(ii). This is the context within which the Commissioner's chosen sentence must be read. The entire paragraph containing the Commissioner's quote reads:

>And so on remand the plaintiff's lawyer will
>have to show that without a cost of living

6

> increase that would bring the fee award up to
> $170 per hour, a lawyer capable of competently
> handling the challenge that his client mounted
> to the denial of social security disability
> benefits could not be found in the relevant
> geographical area to handle such a case.

*Id.* at 565.

In other words, the Court seems to be saying above that since the lawyer's cost of living has not increased to justify an award above $125 per hour, the lawyer must show that no competent lawyer could be found for $125 per hour, if the lawyer wants a rate above $125.  He must prove one or the other; since he has not proven the former, he is left to prove the latter.  Such a reading is consistent with the opinion as a whole and is consistent with Congress' expressed intention in the plain language of the EAJA.

The Commissioner cites three cases which he describes as having adopted his view that both factors must be proven.  Although *Heichelbech v. Astrue*, 2011 WL 4452860, at *2 (S.D. Ind. Sept. 26, 2011), appears to adopt the Commissioner's interpretation, the arguments in the case were not developed under *Mathews-Sheets*.  The Court noted that *Mathews-Sheets* was issued three days before the plaintiff filed his fee petition and, as a result, the Court gave the plaintiff thirty days to

make the newly required showing. *Id.* at 2. Such an early and cursory treatment of *Mathews-Sheets* is of some, but insignificant, support.

The second case, *Oatis v. Astrue*, No 10 C 6043, 2012 WL 965104, at *1 (N.D. Ill. Mar. 20, 2012), also may reflect the Commissioner's interpretation. However, Plaintiff's lawyer in the instant case was the lawyer in *Oatis,* as well. Counsel explained that a fee increase was not granted there because it was not clear what additional showing the Court was looking for and he failed to comply with the Court's order. (Pl.'s Reply at 9.) This explanation is consistent with the Court's description of the situation. (*Id*. at 1.) It is therefore unclear how the Court would have ruled if counsel had submitted the kind of evidence provided in the instant case.

The third case the Commissioner cites as having been overlooked by Plaintiff, *Seabron v. Astrue*, No. 11 C 1078, 2012 WL 1985681 (N.D. Ill. Jun. 4, 2012), seems to provide more support for the Plaintiff's position than for that of the Commissioner's. Although the language in *Seabron* suggests it is adopting a test that requires a plaintiff to show both the affects of inflation and that no competent lawyer could be found without a fee increase, that court actually awarded a rate of $176.25. Furthermore, that award appears to have been made based

on documentation that is substantially similar to the documentation Plaintiff has provided in the instant case.

In light of the above analysis, the Court rejects the Commissioner's contention that a Plaintiff must always show that no competent attorney could be found at a rate of $125 per hour in order to justify an increase in that rate. Other district courts in this Circuit have also rejected the Commissioner's interpretation of *Mathews-Sheets* and have awarded fees at rates above $125, based on a showing similar to what Plaintiff has provided in this case. *See, e.g., Mireles v. Astrue*, No. 10 C 6947, 2012 WL 4853065 (N.D. Ill. Oct. 11, 2012) (collecting cases and awarding $181.25 hourly rate). The requirement advanced by the Commissioner conflicts with the plain language of the statute, is not a necessary reading of *Mathews-Sheets*, and would place a heavy, and potentially expensive, burden on a prevailing plaintiff. *Gonzalez v. Astrue*, 2012 WL 1633937, at *2 n. 1 (S.D. Ind. May 9, 2012) (noting the government would be required to pay the "fees on fees" generated by demanding such proof); *Claiborne v. Astrue*, No. 10 C 7728, 2012 WL 2680777 (N.D. Ill. July 6, 2012) (citing *Gonzalez* in accord).

Here, Plaintiff has shown "that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government" and Plaintiff has done so "by reference to the particular circumstances of the lawyer seeking

the increase." *Mathews-Sheets*, 653 F.3d at 563 and 564.
Plaintiff provided the CPI, All Urban Consumers,
Chicago-Gary-Kenosha (Pl.'s Mot. Ex. 1), to establish that
inflation has affected the Chicago area since 1996, the year
Congress adopted the rate of $125 per hour. Plaintiff has
further provided evidence that this inflation has directly
impacted her lawyer's costs, resulting in an increase in the fees
he charges. (Pl.'s Mot. at 7.) Finally, Plaintiff provided
affidavits from other attorneys that tend to show that fees in
the Chicago area for comparable non-contingent fee work are
substantially higher than $125, supporting the argument that
inflation has impacted legal fees in Chicago[1]. Therefore, the
Court will add a cost of living increase to the statutory rate of
$125, as allowed by the EAJA.

The question remains, however, how much the cost of living
increase should be. Although the Commissioner does not challenge
Plaintiff's calculations for the cost of living increase, only
Plaintiff's right to the increase, the Court is concerned by
Plaintiff's request for $182.13 per hour. Plaintiff stated that
she is requesting a 40% increase in the EAJA rate, (Pl.'s Mot. at

---

[1] The Commissioner has challenged the veracity of the statements in at least one affidavit. However, that challenge was made in the context of the Commissioner's argument that Plaintiff has not shown that no competent attorney could be found for a rate of $125. Since the Court has found that Plaintiff need not make such a showing, the Court does not address the Commissioner's challenges. For the same reason, the Court declines to explore the merits of Plaintiff's creative argument that since these cases are won only 54% of the time the, the effective hourly rate is actually $67.50, and no competent attorney could be found at that rate.

10

7), based on the CPI for September 2011, when most of the legal work in this case was done. (*Id.* at 3.) However, $182.13 is neither a 40% increase in the statutory maximum nor is it based on the CPI for September 2011, using the CPI document Plaintiff submitted as Exhibit 1.

The EAJA statutory maximum is $125. 28 U.S.C. §2412 (d)(2)(A)(ii). Forty percent of $125 is $50. A 40% increase in the EAJA rate would therefore be $175. However, Plaintiff has submitted an itemization of time prepared by her lawyer. (Pl.'s Mot. Ex. 3.) That itemization includes the method by which her lawyer arrived at an hourly rate of $182.13. The method is sound, but the Court finds no basis for the numbers counsel uses. Counsel calculates the requested hourly rate by subtracting a base CPI of 155.7 from an alleged September 2011 CPI of 226.889, yielding an increase of 71.19. This is 45.7% of the base CPI used. Since 45.7% of $125 is $57.13, the final rate adjusted for inflation is $182.13. However, the Court cannot find the CPI numbers counsel uses in that calculation anywhere in the CPI document provided. (Pl.'s Mot. Ex 1.) That document goes from January 1982 (92.2) to December 2011 (218.180). Neither of the numbers counsel uses is anywhere in the CPI document, and counsel's high number was far from being reached in any month. Using the CPI document Plaintiff submitted yields a third possible rate for attorney's fees. The CPI for March 1996, when

the EAJA rate was raised to $125, is 156.3; the CPI for September 2011 is 220.027. This is an increase of 63.727, or approximately 40.77%. Using that figure, the adjusted hourly rate should be increased by $50.96, to $175.96.

A similar problem with Plaintiff's lawyer's methodology was noted in *Just v. Astrue*, No. 11 C 1856, 2012 WL 2780142, at *2-3 (N.D. Ill. July 9, 2012) (no methodology provided to the court and requested rate of $182.50 did not correspond with a 40% increase based on asserted use of the May 2011 CPI). That court granted the 40% increase that plaintiff's lawyer represented he was asking for since it also appeared to accurately reflect the May 2011 CPI. Although the increase for September 2011 is $0.96 more, the Court thinks it best to award the rate that Plaintiff asserts she is requesting. That rate is based on a 40% increase, thus, the attorney's fees will be calculated at a rate of $175 per hour.

**C. To Whom the Fees Will Be Paid**

The retainer and fee agreement that Plaintiff entered into with her lawyer assign any EAJA fee award to him. (Pl.'s Mot. Ex. 2.) Pursuant to this agreement, Plaintiff seeks to have the fees awarded herein made payable to her lawyer, Mr. Barry A. Schultz. The Commissioner argues that, since the fees belong to Plaintiff, they are subject to an offset for any debt Plaintiff may owe to the federal government. As a result, the Commissioner

contends, if there is a debt to be offset, and if any of the award amount remains after that offset, the remainder should be made payable to the Plaintiff. On the other hand, "[i]f counsel for the Defendant can verify that Plaintiff owes no pre-existing debt subject to offset, the Defendant will direct that the award be made payable to the Plaintiff's attorney…" (Def.'s Resp. at 12.)

It is true that an award of fees under the EAJA is made to the party and is therefore subject to an offset for outstanding federal debt. *Astrue v. Ratliff*, 130 S.Ct. 2521, 2526-2527 (2010). However, the Commissioner has not alleged that Plaintiff has any outstanding federal debt. The Commissioner has also left open the possibility that the award will be made payable to the Plaintiff even if there is no offset, in the event that the Commissioner cannot "verify" Plaintiff has no debt. However, in *Mathews-Sheets*, the Seventh Circuit interpreted *Ratliff* to allow direct payment to counsel where an assignment to counsel has been made, if the Commissioner has not alleged that the plaintiff in fact has any outstanding federal debt. As the Seventh Circuit explained, "to ignore the assignment and order the fee paid to [plaintiff] would just create a potential collection problem for the lawyer." *Mathews-Sheets*, 653 F.3d at 565-566.

Because Plaintiff has made a valid assignment of EAJA fees to her lawyer, and the Commissioner has not alleged that

Plaintiff owes any outstanding federal debt, the Court finds that the fees awarded in this case should be made payable directly to Plaintiff's lawyer, Barry A. Schultz.  The Commissioner has not challenged the number of hours billed in this case or the $152 in assistant time, and Plaintiff has withdrawn a request for $33.13 in printing and Federal Express costs that the Commissioner challenged.  Plaintiff's lawyer represents that he spent 3.8 hours preparing the reply brief, bringing the total number of hours charged in this case to 64.1.  Paid at a rate of $175 per hour, this is $11,217.50 in attorney's fees.  The total award is therefore $11,369.50.

## Conclusion

For the reasons set forth above, the petition for attorney fees filed by Plaintiff is granted in part and denied in part. The Court awards Plaintiff fees under the EAJA at a rate of $175 per hour, rather than the requested rate of $182.13.  The fees will be made payable to Plaintiff's attorney, Barry A. Schultz, pursuant to her assignment of the fee award to him, in the amount of $11,369.50.

Dated: December 12, 2012     E N T E R E D:

_____
ARLANDER KEYS
United States Magistrate Judge